MAX·ROSS *vs.* PROVIDENCE JOURNAL CO.

APRIL 29, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. This is an action of trespass on the case for libel. The case is here on the plaintiff's exception to a ruling of the Superior Court sustaining a demurrer to the declaration.

The words alleged to be libelous were contained in an article in the Evening Bulletin, a newspaper owned and published by the defendant. The declaration sets forth in full the article complained of, with the innuendoes which the plaintiff attaches thereto, denies the truth of the charge, and alleges damage to reputation and special damage resulting from impairment of credit and cancellation of fire insurance policies caused by the publication of said article which, with the innuendoes, is as follows:

### POLICE INSPECTORS SEEKING MAX ROSS

"Providence police inspectors today sought to get in touch with Max Ross of 103 Lorimer Avenue, who reported last night, two hours after an $1800 sedan had been found in South Attleboro with the upholstery slashed and saturated with gasoline, that the car had been stolen in this city and was the property of Francis B. Goldenthal, 335 Hope Street. (Meaning thereby that the said Max Ross was sought by the police inspectors because the upholstery of said car had been slashed and saturated with gasoline).

"Attleboro police are holding the machine, and this morning were awaiting a report of the progress of the Providence police. (Meaning the seeking of said Max Ross in the premises). Inspectors here, however, said their first move in the investigation was to have a talk with Ross and thus far they had been unable to find him. (Meaning that the said Ross was being sought by the police for the slashing of the upholstery of said car and saturating said car with gasoline).

"Just before the car was discovered last night Patrolmen Charles Brogan and Peter Marron of the Attleboro police came upon two men in a sandbank off Brown Street in South Attleboro. They questioned the men, one of whom identified himself as Carlton Savage, Box 106, Woonsocket, and then permitted them to go.

"Down the road a short distance the patrolmen discovered the big sedan, the upholstery of which had been slashed in ribbons and soaked with gasoline. (Meaning the police were seeking said Max Ross for the slashing of the upholstery in said sedan and soaking the same with gasoline). It was a very evident attempt, the police said, to destroy the car, and they believed the culprits had been frightened away. A can of gasoline was found in the back of the machine. (Meaning that the police were seeking said Max Ross for the evident attempt to destroy said car).

"Inquiry at the Hope Street house by the police brought the information that Mr. Goldenthal, owner of the machine, was a travelling salesman and now was working in Massachusetts or Connecticut."

The defendant assigns as grounds of demurrer that the declaration without the innuendoes states no cause of action; and that the meaning attributed to the words and the construction placed upon the language of the article by the innuendoes is not the natural and ordinary meaning of the words used in said article.

Some of the innuendoes, standing alone, place an unwarranted meaning upon the language to which they are immediately attached, but considering the headlines and the remainder of the article as a whole we cannot say as a matter of law that the article is not fairly susceptible of the meaning attributed by the innuendoes. The headlines in bold type announce that police inspectors are seeking Max Ross. This sentence is followed by the statement: "Providence police inspectors today sought to get in touch with

Max Ross . . . ." If these two sentences stood alone it might be considered that the second explained the first and softened the effect thereof, but there is attached to the language last quoted, and forming a part of the same sentence, language stating that the plaintiff reported the theft two hours after the sedan had been found in another State in a condition showing that some one had attempted to destroy the car. Such statement might be construed as a tardy report and as containing a veiled insinuation that the lateness of the report indicated that the plaintiff had attempted, either personally or through another, to destroy the sedan and that by reason thereof he was avoiding the police.

It is a question for a jury whether the article as a whole would reasonably convey to the ordinary reader of the Bulletin the meaning attributed by the innuendoes that the plaintiff was guilty of attempting either personally or through another to destroy said sedan and, by reason thereof, the police were seeking him. 36 C. J. 1155 *et seq.*; 37 C. J. 51, 52; *Porter* v. *Post Pub. Co.*, 20 R. I. 88; *Tiepke* v. *Times Pub. Co.*, 20 R. I. 200; *Morrison-Jewell Filtration Co.* v *Lingane*, 19 R. I. 316.

The plaintiff's exception is sustained and the case is remitted to the Superior Court with direction to overrule the demurrer and for further proceedings.

SWEENEY, J., dissenting. I am constrained to dissent from the foregoing opinion because I am convinced that the article complained of is not libelous and consequently there was no error in the decision of the Superior Court sustaining defendant's demurrer to the declaration.

The article complained of, with the defamatory meaning which plaintiff attaches to the words by way of innuendoes, is set forth in the opinion. The innuendoes assert that plaintiff was being sought by the police for the slashing of the upholstery of the car and saturating it with gasoline in an evident attempt to destroy the car. The innuendoes introduce new matter and enlarge the natural meaning of

the words thereby giving to the article a construction which it will not bear. This court has stated that: "The office of an innuendo is to define the defamatory meaning which the plaintiff attaches to the words, if they are equivocal; but it cannot be used to introduce new matter, or to enlarge the natural meaning of the words and thereby to give to the language a construction which it will not bear." *Hackett* ·v. *Providence Telegram Pub. Co.*, 18 R. I. 589. 37 C. J. 23, 24.

Having thus improperly enlarged the natural meaning of the words of the article by the introduction of new matter in the innuendoes, the declaration alleges: "Said article as a whole clearly meant that the police were seeking Max Ross for having slashed the upholstery of said sedan and soaked it with gasoline, and left or caused it to be left at South Attleboro for destruction . . . meaning and intending thereby to charge said plaintiff with the purpose of destroying said car or procuring the destruction thereof." Without the innuendoes the article is not fairly susceptible of the meaning attributed to it by this allegation. .

The substance of the article complained of, without the innuendoes, is that the police sought to get in touch with the plaintiff because he had complained to them that the car had been stolen. In my opinion such an article is not libelous.

*John P. Beagan, Joseph E. Beagan,* for plaintiff.

*Curran, Hart, Gainer & Carr, Joseph H. Gainer,* for defendant.